**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
NUWZUD OMAR TAPLIN,            )
                               )
               Plaintiff,      )    CIVIL ACTION
                               )
v.                             )    No.  14-1237-MLB
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social Security, )
                               )
               Defendant.      )
                               )
```

**MEMORANDUM AND ORDER**

This is an action reviewing a final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits.

**I. General Legal Standards**

The court's standard of review is contained in 42 U.S.C. § 405(g), which provides in part that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive,..." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. The determination is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes a mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that she has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents her from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to perform her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[1] 42 U.S.C. § 423(d).

Five-step evaluation. The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the

---

[1] This standard applies regardless of whether such work exists in the immediate area where the individual lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 423(d)(2)(A).

agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work. Unless the claimant shows that she cannot perform her previous work, she is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

    The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to

evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

**II. History of the case**

Plaintiff initially alleged a disability beginning in July 1999, but later amended her claim to allege an onset date of October 25, 2010. Following a hearing, Administrative Law Judge (ALJ) Judson Scott denied her claim in a written decision issued January 28, 2013. Plaintiff's request for review was denied by the Appeals Council, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

The ALJ found at step one that plaintiff was not currently engaging in substantial gainful activity. At step two, he found plaintiff had the following severe impairments: osteoarthritis; lumbar degenerative disk disease; H. Pylori infection; and erosive gastritis. At step three, the ALJ determined that none of plaintiff's impairments, alone or in combination, met or equaled any of the impairments listed in the regulations.

The ALJ next found that plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except with no concentrated exposure to extreme heat, cold or humidity." Doc. 9 at 21.

At step four, the ALJ found that plaintiff has no past relevant work. At step five, he found that, considering plaintiff's age, education, work experience (together with the Medical-Vocational Guidelines) and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

**III. Discussion.**

Plaintiff's arguments are not easy to decipher. Aside from being opaque, the arguments are inexplicably laced with unsubstantiated attacks on the integrity of the ALJ. These accusations are not only a distraction from the merits of the case, they are wholly inappropriate. Plaintiff's counsel has engaged in such tactics on at least one other occasion in this court.[2] Accordingly, this court has notified the Kansas Disciplinary Administrator of counsel's conduct.

Sifting through the more coherent passages of plaintiff's briefs, the court gathers that plaintiff makes three claims of error. First, plaintiff claims the ALJ failed to properly weigh Dr. West's opinion that plaintiff had a limited ability to bend or stoop. Doc. 12 at 20-21. Second, plaintiff contends the ALJ erred in finding that plaintiff's complaints of disabling pain were not credible. Doc. 12 at 24. And third, plaintiff argues the ALJ's finding that plaintiff

---

[2] Largely in response to the ALJ's hypothetical question to a vocational expert, in which the ALJ asked the expert to assume a person with various limitations including that the person's "posturals are essentially occasional," but the ALJ failed to state specifically that the person was limited to stooping occasionally or less, plaintiff's counsel has unleashed a torrent of accusations. These include assertions that the ALJ engaged in "purposeful manipulation"; he "salted the mine" but did so "with great craft" and "very cleverly"; he "purposefully, or perhaps negligently, failed to mention the detail"; his finding "is corrupt because [he] manipulated the process in order to gain a specific result"; he "conveniently 'modulated' the weight afforded to Dr. West to conform to the corrupted bifurcation process"; he found plaintiff could perform medium work "possibly to frustrate a proper designation of benefits"; and he engaged in an "application of pernicious procedure." Doc. 12, seriatim.

Judge Murguia recently advised plaintiff's counsel that these types of personal attacks "are unwarranted, distracting, and [do] not aid counsel's attempts to advocate on behalf of his client." See Williams v. Colvin, No. 14-1081, Doc. 19 at 4  (U.S. Dist. Ct., D. Kan.).

could perform medium work was not supported by substantial evidence. Doc. 12 at 25.

<u>Summary of medical evidence</u>. As plaintiff concedes, there is scant contemporaneous medical evidence supporting plaintiff's claim of disability on or after October 25, 2010. Nearly all of the medical evidence pertains to plaintiff's condition before that time. For example, in 1999, based upon complaints of pain and swelling in her hands, elbows, ankles and knees, plaintiff was diagnosed by her physician as having inflammatory arthritis, most likely rheumatoid, and was treated with Prednisone and Relafen. Although plaintiff was "doing well" on this combination of medicines, she was a dancer at the time and had "great concerns" that continued use of steroids (Prednisone) would affect her future as a dancer.

In the first half of 2010, plaintiff had numerous emergency room and doctor visits, largely because of anxiety, nausea, gastric problems, and hypertension. She was diagnosed with helicobacter pylori disease and experienced significant weight loss. Her physician recommended a colonoscopy, but plaintiff was anxious about it and cancelled a scheduled procedure at least five times. Other records indicate that plaintiff frequently refused to take prescribed medications due to anxiety over their potential side effects. <u>See e.g.</u>, Doc. 9 at 366 (her physician reports that plaintiff "again has multiple questions regarding what she is going to do if she gets certain side effects from the medications. Again, we tried to strongly reiterate that at this point, we are not getting anywhere with treating any of her disorders because she refuses to take any of the medications."); Doc. 9 at 368 (assessment includes "severe anxiety and

medication noncompliance"); Doc. 9 at 370 (plaintiff "has not taken her Paxil. She is not taking her antihypertensives. She has not been taking the Metronidazole or Clarithromycin for her H. Pylori. * * * She is continuing to have anxiety and panic attacks but refuses to take the medications as prescribed.").[3]

In August 2010, plaintiff was diagnosed with a small hiatal hernia and erosive gastritis. In December 2010, a CT scan of plaintiff's head was taken based upon complaints of vertigo. The test revealed no abnormalities. Plaintiff also complained of shortness of breath, which led to another scan indicating that her heart was normal and her lungs were clear, while she had a "very subtle rotoscoliotic deformity."

In March 2011, plaintiff was assessed as having chronic gastritis, rheumatoid arthritis, hypertension, and anxiety. Among other things, the doctor's report indicates that plaintiff stated she had stiffness in her knees but she had gotten it under control through yoga. She could sometimes walk a block and sometimes a mile, and standing was not particularly affected. The report indicates plaintiff was in no apparent distress and all of her joints appeared normal, with no painful or swollen joints or sore muscles. The doctor assessed that plaintiff "has good days and bad days for the sort of work she is to do. It sounds like she can still do that being a counselor. Probably cannot do a lot of manual labor with her arthritis." Doc. 9

---

[3] There is additional evidence in the record pertaining to plaintiff's apparent anxiety about taking medications. At the hearing before the ALJ, however, plaintiff and her then-counsel conceded that her disability claim was based on physical rather than mental impairments.

at 634.

An x-ray of plaintiff's knees and spine in June 2011 showed "minimal/mild" degenerative changes in the knees, degenerative changes in the lumbar spine with and mild left scoliotic curvature at the thoracolumbar junction, and mild bilateral sacroiliac articulation degenerative changes. Doc. 9 at 654, 689. The greatest change was at L1-2, where there was some intradiscal gas density, disc space narrowing, endplate sclerosis and spurring. The severity of the degenerative change was not markedly different from her condition shown by an April 2010 x-ray.

Plaintiff testified she had had only one prior job in the fifteen years before the alleged onset of disability. She worked between 1995 and 2000 as a counselor, offering assistance via telephone to people in crisis.  She testified that she tried to do the work part-time after that, but she started having severe back and neck pain from sitting too long. She curtailed the work, she said, as she was not making much money at it. Plaintiff was 56 years old at the time of the alleged onset.

ALJ's consideration of Dr. West's opinion. Dr. West is an impartial medical expert who was present via telephone for the hearing before the ALJ. From his examination of plaintiff's records and consideration of her testimony at the hearing, West offered the following opinions. He said the x-rays support a diagnosis of osteoarthritis rather than rheumatoid arthritis, as shown in part by the fact that plaintiff has not developed joint deformities characteristic of the latter type. He said a spondyloarthropathy would explain some of her back pain. He said plaintiff has a hiatal hernia

and an H. pylori infection that apparently manifested itself in erosive gastritis. He noted that plaintiff has an aversion to medications likely stemming from an anxiety disorder.

West opined that plaintiff's hernia would not impair her ability to work. As for the osteoarthritis and spondyloarthropathy, West said these conditions would "somewhat impact" plaintiff's RFC because "she would have some difficulty bending over."[4] West said none of plaintiff's severe impairments meet or equal a listing under the regulations. As for plaintiff's functional limitations, West said plaintiff "would be capable of light activity" and could lift 10 pounds frequently and 20 pounds occasionally; she could stand 6 hours in an 8-hour day with normal breaks; with a sit/stand option she could sit for 6 hours in an 8-hour day; and walk a total of 2 hours. As for postural limitations, West said plaintiff would not be limited on pushing and pulling; she could climb stairs or ramps frequently but never scaffolds or ladders; she could balance frequently; stooping is limited "to occasional to never"; and she should never kneel, crouch or crawl. He also said plaintiff should not be exposed to extreme cold or extreme heat or dust, or to gases or fumes above street level concentrations.

The ALJ in his written decision assigned "great weight" to West's opinion that plaintiff does not have rheumatoid arthritis. But West's opinion "concerning the claimant's residual functional capacity is only given some weight because he did not adequately consider the

---

[4] Although West at first said he would characterize these conditions as mild rather than severe, the ALJ explained to West that under the regulations they would be considered severe because they more than minimally impair plaintiff's ability to work. Doc. 9 at 76.

claimant's activities, which indicate a greater level of functioning." Doc. 9 at 24. For reasons set forth below, the court concludes that this latter analysis of West's opinion was inadequate and amounts to error under the regulations.

West opined on physical limitations resulting from plaintiff's impairments -- including specific limitations on lifting, stooping and crouching. The ALJ failed to specifically address any of these limitations apparently because he considered all of them inconsistent with "claimant's activities." Elsewhere in his opinion, the ALJ identified the following activities: a doctor's note indicating plaintiff was going to go to New Mexico "where she hopes to get a job in the Theatre down there"; a note that plaintiff helps out in her husband's computer business; a note that she has "been active in teaching dance to some people and active in her house"; and a note that she intended to start her own dance studio.

The ALJ failed to address how or why these activities contradicted West's limitations. To begin with, the first and last item cited are not physical activities at all. Plaintiff's hope of obtaining a job in the theater[5] and a plan to start a dance studio were merely aspirations. It might be fair to say that such aspirations are inconsistent with a claimed inability to do any type of work, but standing alone they do not demonstrate an ability to do work at a medium level of exertion as opposed to light work. For example, they do not contradict West's opinion that plaintiff's impairments

---

[5] The record does not disclose whether plaintiff ever traveled to New Mexico or what job she was interested in. The doctor's note mentioning her interest was dated September 2010, prior to plaintiff's alleged disability onset date.

-10-

prevented her from crouching and limited her to stooping less than occasionally. The same is true with respect to the fact that plaintiff helped in her husband's computer business, was "active in her house," or that she taught dance at some point. While the latter activity in particular might imply a certain level of vigor, the statement by itself does not show that plaintiff was capable of performing physical activities in excess of West's limitations. The ALJ's opinion offers no detail or explanation for why these activities refute the limitations indicated by West. <u>Cf.</u> <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) ("Here, the ALJ gave his conclusion but not the reason for his conclusion."). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Hendron v. Colvin</u>, 767 F.3d 951, 954 (10th Cir. 2014) [citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)]. <u>Cf</u>. <u>Diggdon v. Apfel</u>, 189 F.3d 477 (10th Cir. 1999) (The ALJ failed to indicate the evidence he relied upon in making his RFC determination and failed to explain how he considered and resolved the evidence in the record that was inconsistent with his assessment.).

The lack of explanation for plaintiff's RFC in this case is compounded by other oversights. First, the ALJ made no findings at all concerning plaintiff's various physical abilities but summarily concluded that she "has the residual functional capacity to perform medium work" except for environmental exposure. Doc. 9 at 21. In determining an RFC, the ALJ is required to consider and make specific findings as to the claimant's physical abilities. <u>See</u> SSR 96-8p, 1996

WL 374184 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including [physical abilities].... Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."); 20 C.F.R. §404.1545(b)("When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis."). The ALJ did not do so. Second, the ALJ's related finding that plaintiff could perform medium work is likewise unexplained and unsupported by findings. An ability to do a full range of medium work implies an ability to frequently bend or stoop, with the flexibility of the knees and the torso usually being important for that activity. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). West's opinion was that plaintiff was unable or significantly limited in doing that activity, and the ALJ failed to adequately explain why that opinion was not credited -- referring only generally to "claimant's activities." The court cannot say that this unexplained finding is supported by substantial evidence. See Spicer v. Barnhart, 64 Fed.Appx. 173, 178 (10th Cir. 2003) (where ALJ does not provide explanation, the court is left to speculate and cannot meaningfully review the determination); Murphy v. Colvin, 2015 WL 3869768, *4 (D. Kan. 2015) ("When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence."). Moreover,

medium work involves occasionally lifting up to 50 pounds and frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §404.1567(c). West opined that plaintiff was capable of lifting 10 pounds frequently and 20 pounds occasionally. The ALJ's opinion contains no findings concerning plaintiff's ability to lift and does not address West's opinion on that limitation.

Third, the ALJ went on to find that plaintiff had no past relevant work, Doc. 9 at 24, despite evidence that plaintiff had worked full time as a counselor until 2000. Perhaps there is some valid reason for finding that plaintiff's prior work did not qualify as substantial gainful activity, but that finding is not explained in the ALJ's opinion and the reason is not apparent from the record.

Finally, the court cannot accept defendant's suggestion that the foregoing omissions amount to harmless error. Defendant asserts that a vocational expert "testified that a hypothetical individual with the limitations Dr. West opined could perform some of Plaintiff's past work, as well as other jobs that exist in significant numbers in the national economy." Doc. 13 at 6, n.3. Based on that premise, defendant argues that "[e]ven if the ALJ had accepted Dr. West's limitations, Plaintiff would not be found disabled under the Act." This argument appears to be based largely on speculation. To begin with, the ALJ made no predicate findings that would support such an argument. For example, the ALJ found that plaintiff had no relevant past work, and thus never considered whether plaintiff could still perform her past work. Moreover, it is not entirely clear that the ALJ posited a hypothetical to the vocational expert that accurately incorporated West's limitations. West opined among other things that plaintiff's

stooping should be limited "to occasional to never." Doc. 9 at 81. The ALJ's hypothetical to the vocational expert stated that the "posturals are essentially occasional," without mentioning anything specific about stooping or bending. Doc. 9 at 93. Assuming the ALJ was attempting to reiterate West's limitations, he did not do so with complete accuracy, and the court cannot say how this might have affected the testimony or the ALJ's ultimate findings. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1024, n.5 (10th Cir. 1996) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." [cited omitted]). The court also notes that the ALJ determined at step five that plaintiff was not disabled based in part on a conclusion that, with certain additional limitations,[6] plaintiff had the RFC to perform the full range of medium work. Doc. 9 at 25. For reasons previously indicated, the latter finding has not been adequately explained or supported in accordance with the regulations.

In view of the foregoing findings, the court will not reach plaintiff's argument challenging the ALJ's assessment of her credibility, because that issue may be affected by the ALJ's resolution of the other issues on remand, including a determination

---

[6] After noting that Medical-Vocational Rule 203.14 would direct a finding of "not disabled" if the claimant has the RFC to perform the full range of medium work, the ALJ stated that "the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of 'not disabled' is therefore appropriate under the framework of this rule." Doc. 9 at 25. It is not clear from the ALJ's opinion what "additional limitations" he was referring to. It is clear, however, that the conclusion was premised on a finding that plaintiff would otherwise perform the full range of medium work.

-14-

and explanation of plaintiff's RFC. Upon remand, the ALJ may conduct any further proceedings permitted by regulation and is not precluded from reaching any particular result -- whether a finding of disabled or non-disabled -- provided the ruling is supported by substantial evidence and applies the correct legal standards. As noted by Judge Murguia in <u>Williams</u>, this case is remanded because of the ALJ's errors as noted herein -- not because of counsel's inappropriate accusations or because of the quality of counsel's briefs.

**IV. Conclusion**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and remanded for further proceedings consistent with this Memorandum and Order.

IT IS SO ORDERED.

Dated this  22nd    day of July 2015, at Wichita, Kansas.

s/Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE